UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | : | CHAPTER 11 |
| | : | |
| DN REAL ESTATE SERVICES & ACQUISITIONS, LLC | : : | |
| | : | CASE NO. 17-55587-PMB |
| Debtor | : | |

## NOTICE OF HEARING

**PLEASE TAKE NOTICE** that DN REAL ESTATE SERVICES & ACQUISITIONS, LLC filed an MOTION TO APPROVE SALE OF REAL PROPERTY and related papers with the Court seeking an Order on February 27, 2018.

**PLEASE TAKE FURTHER NOTICE** that the Court will hold a hearing on the Motion for Approval of Post-Closing Real Estate Brokers Commission in Courtroom 1202, United States Courthouse, 75 Ted Turner Drive, S.W., Atlanta, Georgia 30303 at **2:00 P.M. on March 26, 2018.**

Your rights may be affected by the court's ruling on these pleadings. You should read these pleadings carefully and discuss them with your attorney if you have one in this bankruptcy case. (If you do not have an attorney, you may wish to consult one). If you do not want the court to grant the relief sought in these pleadings or if you want the court to consider your view, then you and/or your attorney must attend the hearing. You may also file a written response to the pleadings with the Clerk at the address stated below, but you are not required to do so. If you file a written response, you must attach a certificate stating when, how and on whom (including addresses) you served the response. Mail or deliver your response so that it is received by the Clerk at least two business days before the hearing. The address of the Clerk's Office is: Clerk, U.S. Bankruptcy Court, Suite 1202, 75 Ted Turner Drive, SW, Atlanta, Georgia 30303. You must also mail a copy of your response to the undersigned at the address stated below.

Dated: February 27, 2018

/s/ _____
Howard P. Slomka
Georgia Bar #652875
Attorney for the Debtor
Slipakoff & Slomka, PC
Overlook III, Suite 1700
2859 Paces Ferry Rd, SE
Atlanta, GA 30339

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | CHAPTER 11 |
| DN REAL ESTATE SERVICES & | ) | |
| ACQUISITIONS, LLC | ) | |
| Debtor, | ) | CASE NO.: 17-55587-pmb |

==========================================================================

**MOTION TO APPROVE SALE OF REAL PROPERTY**
**FREE AND CLEAR OF LIENS**

*(761 Antone Street)*

Comes now, DN REAL ESTATE SERVICES, LLC, Debtor in the above styled Chapter 11 case, by and through undersigned counsel, and files this Motion to Approve Sale of Real Property Free and Clear of Liens showing to this Honorable Court the following:

1.

The Court has jurisdiction in this matter pursuant to 28 U.S.C. Section 1334, 28 U.S.C. Section 151 et seq., and 11 U.S.C. Section 101 et seq.

2.

Venue is appropriate pursuant to 28 U.S.C. Section 1409.

3.

This matter is a core proceeding as defined in 28 U.S.C. Section 157.

4.

The Debtor filed for Chapter 11 relief on March 28, 2017. The Chapter 11 341 Meeting of Creditors was held on May 8, 2017. Debtor's case has not yet been confirmed.

5.

The Debtor is in the business of buying, renovating, and reselling residential homes. As such, the sale of a home that Debtor purchased with the intent to resell is in the "ordinary course of business" as that term is used 11 USC 363(c)(1), which means that Debtor does not require Court approval pursuant to 11 USC 363(b)(1) for sales outside the ordinary course of business. Nevertheless, in an abundance of caution, and because the sales price will only partially satisfy the secured lender, and because this sale will transfer the Debtor's final remaining property, Debtor files this Motion to give adequate notice to all interested parties and to seek express approval of the sale.

6.

The Debtor requests to the right to sell the real property located at 761 Antone Street NW, Atlanta, GA 30318 (the "Property"). The property is currently subject to a mortgage lien held by LendingHome Funding Corp. ("Lender"). The Debtor's petition provides that the fair market value of the Property is $375,000.00, however, according to the Fulton County 2017 tax assessment, a copy of which is attached hereto as *Exhibit A*, the Property has a fair market value of approximately $197,000.00.

7.

On or about January 24, 2018 a prospective buyer ("Buyer") has offered to purchase the Property from Debtor for $320,000.00. Keller Williams Realty Atlanta Partners ("Broker") is the broker representing the Seller and Drake of Georgia Inc. representing the Buyer in connection with the sale of the Property. Broker has agreed for its commission to be paid at the sale of the Property. This Court has approved the employment of Broker pursuant to an Order dated July 1, 2017 (Doc. No. 29).

8.

Debtors and Buyer are not related and Buyer is not an "Insider" as defined in 11 U.S.C. Section 101. There is no equity in the Property that will be available after paying closing costs, brokers' commissions and disbursing all remaining proceeds to secured Lender, in exchange for its release of the mortgage.

9.

The Debtors respectfully request that they be allowed to sell the Property.

WHEREFORE Debtors pray:

(a) That this "Motion" be filed, read and considered;

(b) That the Debtors be allowed to sell the Property waiving the fourteen day stay of the requested sale pursuant to BR 6004(h), in order to allow a closing on or before March 30, 2018;

(c) That this Honorable Court grants such other and further relief as it may deem just and proper.

Dated this 27th day of February, 2018

Respectfully Submitted,

_____/s/_____
Howard Slomka
GA Bar # 652875
Slipakoff & Slomka, P.C.
Attorney for Debtor
2859 Paces Ferry Road, Suite 1700
Atlanta, GA 30339
Tel. (404) 800-4001



# PURCHASE AND SALE AGREEMENT

Offer Date: January 24, 2018

**2018 Printing**

## A. KEY TERMS AND CONDITIONS

1. **Purchase and Sale.** The undersigned buyer(s) ("Buyer") agree to buy and the undersigned seller(s) ("Seller") agree to sell the real property described below including all fixtures, improvements and landscaping therein ("Property") on the terms and conditions set forth in this Agreement.
   a. **Property Identification:** Address: 761 Antone Street
   City Atlanta, County Fulton, Georgia, Zip Code 30318
   MLS Number: 5944199      Tax Parcel I.D. Number: 17015200060135
   b. **Legal Description:** The legal description of the Property is [select one of the following below]:
   ☐ (1) attached as an exhibit hereto;
   ☑ (2) the same as described in Deed Book 55571, Page 637, et. seq., of the land records of the above county; **OR**
   ☐ (3) Land Lot(s) _____ of the _____ District, _____ Section/ GMD, Lot _____, Block _____, Unit _____, Phase/Section _____ of _____ Subdivision/Development, according to the plat recorded in Plat Book _____, Page _____, et. seq., of the land records of the above county.

2. **Purchase Price of Property to be Paid by Buyer.**
   $ 320,000

3. **Closing Costs.**
   Seller's Contribution at Closing: $ 7,000

4. **Closing and Possession.**
   Closing Date shall be February 26, 2018 _____ with possession of the Property transferred to Buyer at
   ☑ Closing **OR** ☐ _____ days after Closing at _____ o'clock ☐ AM ☐ PM (attach F140 Temporary Occupancy Agreement).

5. **Holder of Earnest Money ("Holder").** (If Holder is Closing Attorney, F84(A) must be attached as an exhibit hereto, and F84(B) must be signed by Closing Attorney.)
   Drake Realty of GA

6. **Closing Attorney/Law Firm.**
   Halperin Lyman, LLC

7. **Earnest Money.** Earnest Money shall be paid by ☑ check ☐ cash or ☐ wire transfer of immediately available funds as follows:
   ☐ a. $ _____ as of the Offer Date.
   ☑ b. $ 5,000 _____ within 3 days from the Binding Agreement Date.
   ☐ c. _____.

8. **Inspection and Due Diligence.**
   a. **Due Diligence Period:** Property is being sold subject to a Due Diligence Period of 14 days from the Binding Agreement Date.
   b. **Option Payment for Due Diligence Period:** In consideration of Seller granting Buyer the option to terminate this Agreement, Buyer:
   (1) has paid Seller $10.00 in nonrefundable option money, the receipt and sufficiency of which is hereby acknowledged; plus
   (2) shall pay Seller additional option money of $ N/A _____ by ☐ check or ☐ wire transfer of immediately available funds either ☐ as of the Offer Date; **OR** ☐ within _____ days from the Binding Agreement Date. Any additional option money paid by Buyer to Seller ☐ shall (subject to lender approval) or ☐ shall not be applied toward the purchase price at closing and shall not be refundable to Buyer unless the closing fails to occur due to the default of the Seller.

9. **Lead-Based Paint.** To the best of Seller's knowledge, the residential dwelling(s) on the Property (including any portion thereof or painted fixture therein) ☑ was (attach F54 Lead-Based Paint Exhibit) **OR** ☐ was not built prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. **Selling Broker is** Drake Realty of GA Inc. **and is:**
    (1) ☑ representing Buyer as a client.
    (2) ☐ working with Buyer as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Buyer.

    b. **Listing Broker is** Keller Williams Realty Atlanta Partners **and is:**
    (1) ☑ representing Seller as a client.
    (2) ☐ working with Seller as a customer.
    (3) ☐ acting as a dual agent representing Buyer and Seller.
    (4) ☐ acting as a designated agent where:
    _____ has been assigned to exclusively represent Seller.

    c. **Material Relationship Disclosure:** The material relationships required to be disclosed by either Broker are as follows:
    N/A

11. **Time Limit of Offer.** The Offer set forth herein expires at 9 o'clock p .m. 01/24/2018

Buyer(s) Initials MH      Seller(s) Initials 01/24/18 10:36AM EST

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Zachary Grifenhagen IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.
Copyright© 2018 by Georgia Association of REALTORS®, Inc.      F20, Purchase and Sale Agreement, Page 1 of 8, 01/01/18

**B. CORRESPONDING PARAGRAPHS FOR SECTION A**

1. **Purchase and Sale.**
   a. **Warranty:** Seller warrants that at the time of closing Seller will convey good and marketable title to said Property by limited warranty deed subject only to: (1) zoning; (2) general utility, sewer, and drainage easements of record as of the Binding Agreement Date and upon which the improvements do not encroach; (3) declarations of condominium and declarations of covenants, conditions and restrictions of record on the Binding Agreement Date; and (4) leases and other encumbrances specified in this Agreement. Buyer agrees to assume Seller's responsibilities in any leases specified in this Agreement.
   b. **Examination:** Buyer may examine title and obtain a survey of the Property and furnish Seller with a written statement of title objections at or prior to the closing. If Seller fails or is unable to satisfy valid title objections at or prior to the closing or any unilateral extension thereof, which would prevent the Seller from conveying good and marketable title to the Property, then Buyer, among its other remedies, may terminate the Agreement without penalty upon written notice to Seller. Good and marketable title as used herein shall mean title which a title insurance company licensed to do business in Georgia will insure at its regular rates, subject only to standard exceptions.
   c. **Title Insurance:** Buyer hereby directs any mortgage lender involved in this transaction to quote the cost of title insurance based upon the presumption that Buyer will be obtaining an enhanced title insurance policy since such a policy affords Buyer greater coverage.

2. **Purchase Price to be Paid by Buyer.** The Purchase Price shall be paid in U.S. Dollars at closing by wire transfer of immediately available funds, or such other form of payment acceptable to the closing attorney.

3. **Closing Costs.**
   a. **Seller's Contribution at Closing:** At closing, Seller shall make the referenced Seller's Monetary Contribution which Buyer may use to pay any cost or expense of Buyer related to this transaction. Buyer acknowledges that Buyer's mortgage lender(s) may not allow the Seller's Monetary Contribution, or the full amount thereof, to be used for some costs or expenses. In such event, any unused portion of the Seller's Monetary Contribution shall remain the property of the Seller. The Seller shall pay the fees and costs of the closing attorney: (1) to prepare and record title curative documents and (2) for Seller not attending the closing in person.
   b. **Items Paid by Buyer:** At closing, Buyer shall pay: (1) Georgia property transfer tax; (2) the cost to search title and tax records and prepare the limited warranty deed; and (3) all other costs, fees and charges to close this transaction, except as otherwise provided herein.
   c. **Prorations:** Ad valorem property taxes, community association fees, solid waste and governmental fees and utility bills for which service cannot be terminated as of the date of closing shall be prorated as of the date of closing. In the event ad valorem property taxes are based upon an estimated tax bill or tax bill under appeal, Buyer and Seller shall, upon the issuance of the actual tax bill or the appeal being resolved, promptly make such financial adjustments between themselves as are necessary to correctly prorate the tax bill. In the event there are tax savings resulting from a tax appeal, third party professional costs to handle the appeal may be deducted from the savings for that tax year before re-prorating. Any pending tax appeal for the year in which the Property is sold shall be deemed assigned to Buyer at closing.

4. **Closing and Possession.**
   a. **Right to Extend the Closing Date:** Buyer or Seller may unilaterally extend the closing date for eight (8) days upon notice to the other party given prior to or on the date of closing if: (1) Seller cannot satisfy valid title objections (excluding title objections that: (a) can be satisfied through the payment of money or by bonding off the same; and (b) do not prevent Seller from conveying good and marketable title, as that term is defined herein, to the Property); (2) Buyer's mortgage lender (even in "all cash" transactions where Buyer is obtaining a mortgage loan) or the closing attorney is delayed and cannot fulfill their respective obligations by the date of closing, provided that the delay is not caused by Buyer; or (3) Buyer has not received required estimates or disclosures and Buyer is prohibited from closing under federal regulations. The party unilaterally extending the closing date shall state the basis for the delay in the notice of extension. If the right to unilaterally extend the closing date is exercised once by either the Buyer or Seller, the right shall thereafter terminate.
   b. **Keys and Openers:** At time of possession, Seller shall provide Buyer with all keys, door openers, codes and other similar equipment pertaining to the Property. If Buyer's possession is after closing, Seller shall provide Buyer with one set of keys to the Property at closing and all keys at the time of possession.

5. **Holder of Earnest Money.** The earnest money shall be deposited into Holder's escrow/trust account (with Holder being permitted to retain the interest if the account is interest bearing) not later than: (a) five (5) banking days after the Binding Agreement Date hereunder or (b) five (5) banking days after the date it is actually received if it is received after the Binding Agreement Date. If Buyer writes a check for earnest money and the same is deposited into Holder's escrow/trust account, Holder shall not return the earnest money until the check has cleared the account on which the check was written. In the event any earnest money check is dishonored by the bank upon which it is drawn, or earnest money is not timely paid, Holder shall promptly give notice of the same to Buyer and Seller. Buyer shall have three (3) banking days from the date of receiving the notice to cure the default and if Buyer does not do so, Seller may within seven (7) days thereafter terminate this Agreement upon notice to Buyer. If Seller fails to terminate the Agreement timely, Seller's right to terminate based on the default shall be waived.

6. **Closing Attorney/Law Firm.** Buyer shall have the right to select the closing attorney to close this transaction, and hereby selects the closing attorney referenced herein. If Buyer's mortgage lender refuses to allow that closing attorney to close this transaction, Buyer shall select a different closing attorney acceptable to the mortgage lender. The closing attorney shall represent the mortgage lender in any transaction in which the Buyer obtains mortgage financing (including transactions where the method of payment referenced herein is "all cash"). In transactions where the Buyer does not obtain mortgage financing, the closing attorney shall represent the Buyer.

7. **Earnest Money**.
   a. **Entitlement to Earnest Money:** Subject to the paragraph below, Buyer shall be entitled to the earnest money upon the: (1) failure of the parties to enter into a binding agreement; (2) failure of any unexpired contingency or condition to which this Agreement is subject; (3) termination of this Agreement due to the default of Seller; or (4) termination of this Agreement in accordance with a specific right to terminate set forth in the Agreement. Otherwise, the earnest money shall be applied towards the purchase price of the Property at closing or if other funds are used to pay the purchase price then the earnest money shall be returned to Buyer.
   b. **Disbursement of Earnest Money:** Holder shall disburse the earnest money upon: (1) the closing of Property; (2) a subsequent written agreement of Buyer and Seller; (3) an order of a court or arbitrator having jurisdiction over any dispute involving the earnest money; or (4) the failure of the parties to enter into a binding agreement (where there is no dispute over the formation or enforceability of the Agreement). In addition, Holder may disburse the earnest money upon a reasonable interpretation of the Agreement, provided that Holder first gives all parties at least ten (10) days notice stating to whom and why the disbursement will be made. Any party may object to the proposed disbursement by giving written notice of the same to Holder within the ten (10) day notice period. Objections not timely made in writing shall be deemed waived. If Holder receives an objection and, after considering it, decides to disburse the earnest money as originally proposed, Holder may do so and send notice to the parties of Holder's action. If Holder decides to modify its proposed disbursement, Holder shall first send a new ten (10) day notice to the parties stating the rationale for the modification and to whom the disbursement will now be made. Holder shall offer to disburse the earnest money to Seller by check in the event Holder: (1) makes a reasonable interpretation of the Agreement that the Agreement has been terminated due to Buyer's default; and (2) sends the required ten (10) day notice of the proposed disbursement to Buyer and Seller. If Seller accepts the offer and Holder issues a check to Seller which is deposited by Seller, it shall constitute liquidated damages in full settlement of all claims of Seller against Buyer and the Brokers in this transaction. Holder may require Seller to sign a W-9 before issuing a check to Seller for liquidated damages of $600 or more. Such liquidated damages are a reasonable pre-estimate of Seller's actual damages, which damages are difficult to ascertain and are not a penalty. Nothing herein shall prevent the Seller from declining the tender of the earnest money by the Holder. In such event, Holder, after giving Buyer and Seller the required ten (10) day notice of the proposed disbursement, shall disburse the earnest money to Buyer.
   c. **Interpleader:** If an earnest money dispute cannot be resolved after a reasonable time, Holder may interplead the earnest money into a court of competent jurisdiction if Holder is unsure who is entitled to the earnest money. Holder shall be reimbursed for and may deduct its costs, expenses and reasonable attorney's fees from any funds interpleaded. The prevailing defendant in the interpleader lawsuit shall be entitled to collect its attorney's fees, court costs and the amount deducted by Holder to cover Holder's costs and expenses from the non-prevailing defendant.
   d. **Hold Harmless:** All parties hereby covenant and agree to: (1) indemnify and hold Holder harmless from and against all claims, injuries, suits and damages arising out of the performance by Holder of its duties; (2) not to sue Holder for any decision of Holder to disburse earnest money in accordance with this Agreement.

8. **Inspection and Due Diligence**.
   a. **Right to Inspect Property:** Upon prior notice to Seller, Buyer and/or Buyer's representatives shall have the right to enter the Property at Buyer's expense and at reasonable times (including immediately prior to closing) to inspect, examine, test, appraise and survey Property. Seller shall cause all utilities, systems and equipment to be on so that Buyer may complete all inspections. Buyer agrees to hold Seller and all Brokers harmless from all claims, injuries and damages relating to the exercise of these rights and shall promptly restore any portion of the Property damaged or disturbed from testing or other evaluations to a condition equal to or better than the condition it was in prior to such testing or evaluation. If Buyer is concerned that the Property may have been used as a laboratory for the production of methamphetamine, or as a dumpsite for the same, Buyer should review the National Clandestine Laboratory Register – Georgia at www.dea.gov.
   b. **Duty to Inspect Neighborhood:** In every neighborhood there are conditions which different buyers may find objectionable. Buyer shall have the sole duty to become familiar with neighborhood conditions that could affect the Property such as landfills, quarries, power lines, airports, cemeteries, prisons, stadiums, odor and noise producing activities, crime and school, land use, government and transportation maps and plans. It shall be Buyer's sole duty to become familiar with neighborhood conditions of concern to Buyer. **If Buyer is concerned about the possibility of a registered sex offender residing in a neighborhood in which Buyer is interested, Buyer should review the Georgia Violent Sex Offender Registry available on the Georgia Bureau of Investigation Website at www.gbi.georgia.gov.**
   c. **Warranties Transfer:** Seller agrees to transfer to Buyer, at closing, subject to Buyer's acceptance thereof (and at Buyer's expense, if there is any cost associated with said transfer), Seller's interest in any existing manufacturer's warranties, service contracts, termite treatment and/or repair guarantee and/or other similar warranties which, by their terms, may be transferable to Buyer.
   d. **Property Sold "As-Is" Unless this Agreement is Subject to Due Diligence Period:**
      (1) **General:** Unless the Property is being sold subject to a Due Diligence Period referenced herein, the Property shall be sold "as-is" with all faults. Even if the Property is sold "as-is" Seller is required under Georgia law to disclose to the Buyer latent or hidden defects in the Property which Seller is aware and which could not have been discovered by the Buyer upon a reasonable inspection of the property. The inclusion of a Due Diligence Period herein shall: (a) during its term make this Agreement an option contract in which Buyer may decide to proceed or not proceed with the purchase of the Property for any or no reason; and (b) be an acknowledgement by Seller that Buyer has paid separate valuable consideration of $10 for the granting of the option.
      (2) **Purpose of Due Diligence Period:** During the Due Diligence Period, Buyer shall determine whether or not to exercise Buyer's option to proceed or not proceed with the purchase of the Property. If Buyer has concerns with the Property, Buyer may during the Due Diligence Period seek to negotiate an amendment to this Agreement to address such concerns.
      (3) **Notice of Decision Not To Proceed:** Buyer shall have elected to exercise Buyer's option to purchase the Property unless prior to the end of any Due Diligence Period, Buyer notifies Seller of Buyer's decision not to proceed by delivering to Seller a notice of termination of this Agreement. In the event Buyer does not terminate this Agreement prior to the end of the Due Diligence Period, then: (a) Buyer shall have accepted the Property "as-is" subject to the terms of this Agreement; and (b) Buyer shall no longer have any right to terminate this Agreement based upon the Due Diligence Period.
   e. **Repairs:** All agreed upon repairs and replacements shall be performed in a good and workmanlike manner prior to closing.

9. **Lead-Based Paint.** If any portion of a residential dwelling on the Property was built prior to 1978, the Lead-Based Paint Exhibit is hereby attached as an exhibit to this Agreement. The term "residential dwelling" includes any painted fixture or material used therein that was built or manufactured prior to 1978.

10. **Brokerage Relationships in this Transaction.**
    a. **Agency Disclosure:** In this Agreement, the term "Broker" shall mean a licensed Georgia real estate broker or brokerage firm and its affiliated licensees unless the context would indicate otherwise. No Broker in this transaction shall owe any duty to Buyer or Seller greater than what is set forth in their brokerage engagements and the Brokerage Relationships in Real Estate Transactions Act, O.C.G.A. § 10-6A-1 et. seq.;
        (1) **No Agency Relationship:** Buyer and Seller acknowledge that, if they are not represented by Brokers in a client relationship, they are each solely responsible for protecting their own interests, and that Broker's role is limited to performing ministerial acts for that party.
        (2) **Consent to Dual Agency:** If Broker is acting as dual agent in this transaction, Buyer and Seller consent to the same and acknowledge having been advised of the following:
            i. **Dual Agency Disclosure:** *[Applicable only if Broker is acting as a dual agent in this transaction.]*
                (a) As a dual agent, Broker is representing two clients whose interests are or at times could be different or even adverse;
                (b) Broker will disclose all adverse material facts relevant to the transaction and actually known to the dual agent to all parties in the transaction except for information made confidential by request or instructions from each client which is not otherwise required to be disclosed by law;
                (c) Buyer and Seller do not have to consent to dual agency and the consent of Buyer and Seller to dual agency has been given voluntarily and the parties have read and understand their brokerage engagement agreements.
                (d) Notwithstanding any provision to the contrary contained herein Buyer and Seller each hereby direct Broker while acting as a dual agent to keep confidential and not reveal to the other party any information which could materially and adversely affect their negotiating position.
            ii. **Designated Agency Disclosure:** If Broker in this transaction is acting as a designated agent, Buyer and Seller consent to the same and acknowledge that each designated agent shall exclusively represent the party to whom each has been assigned as a client and shall not represent in this transaction the client assigned to the other designated agent.
    b. **Brokerage:** Seller has agreed to pay Listing Broker(s) a commission pursuant to a separate brokerage engagement agreement entered into between the parties and incorporated herein by reference ("Listing Agreement"). The Listing Broker has agreed to share that commission with the Selling Broker. The closing attorney is hereby authorized and directed to pay the Broker(s) at closing, their respective portions of the commissions out of the proceeds of the sale. If the sale proceeds are insufficient to pay the full commission, the party owing the commission shall pay any shortfall at closing. The acceptance by the Broker(s) of a partial real estate commission at the closing shall not relieve the party owing the same from paying the remainder after the closing (unless the Broker(s) have expressly agreed in writing to accept the amount paid in full satisfaction of the Broker(s) claim to a commission). The Brokers herein are signing this Agreement to reflect their role in this transaction and consent to act as Holder if either of them is named as such. This Agreement and any amendment thereto shall be enforceable even without the signature of any Broker referenced herein.
    c. **Disclaimer:** Buyer and Seller have not relied upon any advice or representations of Brokers other than what is included in this Agreement. Brokers shall have no duty to advise Buyer and Seller on any matter relating to the Property which could have been revealed through a survey, title search, Official Georgia Wood Infestation Report, inspection by a professional home inspector or construction expert, utility bill review, an appraisal, inspection by an environmental engineering inspector, consulting governmental officials or a review of this Agreement and transaction by an attorney, financial planner, mortgage consultant or tax planner. Buyer and Seller should seek independent expert advice regarding any matter of concern to them relative to the Property and this Agreement. If Broker has written any special stipulations herein, the party for whom such special stipulations were written: a) confirms that each such stipulation reflects the party's complete understanding as to the substance and form of the special stipulations; b) hereby adopts each special stipulation as the original work of the party; and c) hereby agrees to indemnify and hold Broker who prepared the stipulation harmless from any and all claims, causes of action, suits, and damages arising out of or relating to such special stipulation.

11. **Time Limit of Offer.** The Time Limit of the Offer shall be the date and time referenced herein when the Offer expires unless prior to that date and time both of the following have occurred: (a) the Offer has been accepted by the party to whom the Offer was made; and (b) notice of acceptance of the Offer has been delivered to the party who made the Offer.

## C. OTHER TERMS AND CONDITIONS

1. **Notices.**
    a. **Generally:** All notices given hereunder shall be in writing, legible and signed by the party giving the notice. In the event of a dispute regarding notice, the burden shall be on the party giving notice to prove delivery. The requirements of this notice paragraph shall apply even prior to this Agreement becoming binding. Notices shall only be delivered: (1) in person; (2) by courier, overnight delivery service or by certified or registered U.S. mail (hereinafter collectively "Delivery Service"); or (3) by e-mail or facsimile. The person delivering or sending the written notice signed by a party may be someone other than that party.
    b. **Delivery of Notice:** A notice to a party shall be deemed to have been delivered and received upon the earliest of the following to occur: (1) the actual receipt of the written notice by a party; (2) in the case of delivery by a Delivery Service, when the written notice is delivered to an address of a party set forth herein (or subsequently provided by the party following the notice provisions herein), provided that a record of the delivery is created; (3) in the case of delivery electronically, on the date and time the written notice is electronically sent to an e-mail address or facsimile number of a party herein (or subsequently provided by the party following the notice provisions herein). Notice to a party shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the party set forth herein (or subsequently provided by the party following the notice provisions herein).

c. **When Broker Authorized to Accept Notice for Client:** Except where the Broker is acting in a dual agency capacity, the Broker and any affiliated licensee of the Broker representing a party in a client relationship shall be authorized agents of the party and notice to any of them shall for all purposes herein be deemed to be notice to the party. Notice to an authorized agent shall not be effective unless the written notice is sent to an address, facsimile number or e-mail address of the authorized agent set forth herein (or subsequently provided by the authorized agent following the notice provisions herein). Except as provided for herein, the Broker's staff at a physical address set forth herein of the Broker or the Broker's affiliated licensees are authorized to receive notices delivered by a Delivery Service. The Broker, the Broker's staff and the affiliated licensees of the Broker shall not be authorized to receive notice on behalf of a party in any transaction in which a brokerage engagement has not been entered into with the party or in which the Broker is acting in a dual agency capacity. In the event the Broker is practicing designated agency, only the designated agent of a client shall be an authorized agent of the client for the purposes of receiving notice.

2. **Default.**
   a. **Rights of Buyer or Seller:** A party defaulting under this Agreement shall be liable for the default. The non-defaulting party may pursue any lawful remedy against the defaulting party.
   b. **Rights of Broker:** In the event a party defaults under this Agreement, the defaulting party shall pay as liquidated damages to every broker involved in this transaction with whom the defaulting party does not have a brokerage engagement agreement an amount equal to the share of the commission the broker would have received had the transaction closed. For purposes of determining the amount of liquidated damages to be paid by the defaulting party, the written offer(s) of compensation to such broker and/or other written agreements establishing such broker's commission are incorporated herein by reference. The liquidated damages referenced above are a reasonable pre-estimate of the Broker(s) actual damages and are not a penalty. In the event a Broker referenced herein either has a brokerage engagement agreement or other written agreement for the payment of a real estate commission with a defaulting party, the Broker shall only have such remedies against the defaulting party as are provided for in such agreement.
   c. **Attorney's Fees:** In any litigation or arbitration arising out of this Agreement, including but not limited to breach of contract claims between Buyer and Seller and commission claims brought by a broker, the non-prevailing party shall be liable to the prevailing party for its reasonable attorney's fees and expenses.

3. **Risk of Damage to Property.** Seller warrants that at the time of closing the Property and all items remaining with the Property, if any, will be in substantially the same condition (including conditions disclosed in the Seller's Property Disclosure Statement) as on the Binding Agreement Date, except for changes made to the condition of Property pursuant to the written agreement of Buyer and Seller. Seller shall deliver Property clean and free of trash and debris at time of possession. Notwithstanding the above, if the Property is destroyed or substantially damaged prior to closing, Seller shall promptly give notice to Buyer of the same and provide Buyer with whatever information Seller has regarding the availability of insurance and the disposition of any insurance claim. Buyer or Seller may terminate this Agreement without penalty not later than fourteen (14) days from receipt of the above notice. If Buyer or Seller do not terminate this Agreement, Seller shall cause Property to be restored to substantially the same condition as on the Binding Agreement Date. The date of closing shall be extended until the earlier of one year from the original date of closing, or seven (7) days from the date that Property has been restored to substantially the same condition as on the Binding Agreement Date and a new certificate of occupancy (if required) is issued.

4. **Other Provisions.**
   a. **Entire Agreement, Modification and Assignment:** This Agreement constitutes the sole and entire agreement between all of the parties, supersedes all of their prior written and verbal agreements and shall be binding upon the parties and their successors, heirs and permitted assigns. No representation, promise or inducement not included in this Agreement shall be binding upon any party hereto. This Agreement may not be amended or waived except upon the written agreement of Buyer and Seller. This Agreement may not be assigned by Buyer except with the written approval of Seller which may be withheld for any reason or no reason. Any assignee shall fulfill all the terms and conditions of this Agreement.
   b. **Survival of Agreement:** The following shall survive the closing of this Agreement: (1) the obligation of a party to pay a real estate commission; (2) any warranty of title; (3) all representations of Seller regarding the Property; (4) the section on condemnation; and (5) any obligations which the parties herein agree shall survive the closing or may be performed or fulfilled after the closing.
   c. **Governing Law and Interpretation:** This Agreement may be signed in multiple counterparts each of which shall be deemed to be an original and shall be interpreted in accordance with the laws of Georgia. No provision herein, by virtue of the party who drafted it, shall be interpreted less favorably against one party than another. All references to time shall mean the time in Georgia. If any provision herein is to be unenforceable, it shall be severed from this Agreement while the remainder of the Agreement shall, to the fullest extent permitted by law, continue to have full force and effect as a binding contract.
   d. **Time of Essence:** Time is of the essence of this Agreement.
   e. **Terminology:** As the context may require in this Agreement: (1) the singular shall mean the plural and vice versa; and (2) all pronouns shall mean and include the person, entity, firm, or corporation to which they relate. The letters "N.A." or "N/A", if used in this Agreement, shall mean "Not Applicable", except where the context would indicate otherwise.
   f. **Binding Agreement Date:** The Binding Agreement Date shall be the date when a party to this transaction who has accepted an offer or counteroffer to buy or sell real property delivers notice of that acceptance to the party who made the offer or counteroffer in accordance with the Notices section of the Agreement. Notice of the Binding Agreement Date may be delivered by either party (or the Broker working with or representing such party) to the other party. If notice of accurate Binding Agreement Date is delivered, the party receiving notice shall sign the same and immediately return it to the other party.
   g. **Duty to Cooperate:** All parties agree to do all things reasonably necessary to timely and in good faith fulfill the terms of this Agreement. Buyer and Seller shall execute and deliver such certifications, affidavits, and statements required by law or reasonably requested by the closing attorney, mortgage lender and/or the title insurance company to meet their respective requirements.
   h. **Electronic Signatures:** For all purposes herein, an electronic or facsimile signature shall be deemed the same as an original signature; provided, however, that all parties agree to promptly re-execute a conformed copy of this Agreement with original signatures if requested to do so by, the buyer's mortgage lender or the other party.
   i. **Extension of Deadlines:** No time deadline under this Agreement shall be extended by virtue of it falling on a Saturday, Sunday or federal holiday except for the date of closing.

j. **GAR Forms:** The Georgia Association of REALTORS®, Inc. ("GAR") issues certain standard real estate forms. These GAR forms are frequently provided to the parties in real estate transactions. No party is required to use any GAR form. Since these forms are generic and written with the interests of multiple parties in mind, they may need to be modified to meet the specific needs of the parties using them. If any party has any questions about his or her rights and obligations under any GAR form he or she should consult an attorney. The parties hereto agree that the GAR forms may only be used in accordance with the licensing agreement of GAR. While GAR forms may be modified by the parties, no GAR form may be reproduced with sections removed, altered or modified unless the changes are visible on the form itself or in a stipulation, addendum, exhibit or amendment thereto.

k. **No Authority to Bind:** No Broker or affiliated licensee of Broker, by virtue of this status, shall have any authority to bind any party hereto to any contract, provisions herein, amendments hereto, or termination hereof. However, if authorized in this Agreement, Broker shall have the right to accept notice on behalf of a party.

l. **Condemnation:** Seller shall: (1) immediately notify Buyer if the Property becomes subject to a condemnation proceeding; and (2) provide Buyer with the details of the same. Upon receipt of such notice, Buyer shall have the right, but not the obligation for 7 days thereafter, to terminate this Agreement upon notice to Seller in which event Buyer shall be entitled to a refund of all earnest money and other monies paid by Buyer toward the Property without deduction or penalty. If Buyer does not terminate the Agreement within this time frame, Buyer agrees to accept the Property less any portion taken by the condemnation and if Buyer closes, Buyer shall be entitled to receive any condemnation award or negotiated payment for all or a portion of the Property transferred or conveyed in lieu of condemnation.

5. **Beware of Cyber Fraud.** Fake e-mails attempting to get you to wire money to criminal computer hackers are increasingly common in real estate transactions. Under this scam, computer hackers fraudulently assume the online identity of the actual mortgage lender, closing attorney and/or real estate broker with whom you are working in the real estate transaction. Posing as a legitimate company, they then direct you to wire money to them. In many cases, the fake e-mail is sent from what appears to be the authentic web page of the legitimate company responsible for sending the wiring instructions. You should use great caution in wiring funds based solely on wiring instructions sent to you by e-mail. Independently verifying the wiring instructions with someone from the company sending them is the best way to prevent fraud. In particular, you should treat as highly suspect any follow up e-mails you receive from a mortgage lender, closing attorney and/or real estate broker directing you to wire funds to a revised account number. Never verify wiring instructions by calling a telephone number provided along with a second set of wiring instructions since you may end up receiving a fake verification from the computer hackers trying to steal your money. Independently look up the telephone number of the company who is supposed to be sending you the wiring instructions to make sure you have the right one.

6. **Exhibits and Addenda.** All exhibits and/or addenda attached hereto, listed below, or referenced herein are made a part of this Agreement. If any such exhibit or addendum conflicts with any preceding paragraph (including any changes thereto made by the parties), said exhibit or addendum shall control:
   - ☐ All Cash Sale Exhibit (F79) "_____"
   - ☐ Back-up Agreement Contingency Exhibit (F91) "_____"
   - ☐ Closing Attorney Acting as Holder of Earnest Money Exhibit (F84(A)) "_____"
   - ☐ Condominium Resale Purchase and Sale Exhibit (F33) "_____"
   - ☒ Conventional Loan Contingency Exhibit (F64) " A    "
   - ☐ FHA Loan Contingency Exhibit (F63) "_____"
   - ☒ Lead-Based Paint Exhibit (F54) " B    "
   - ☐ Lease Purchase and Sale Exhibit (F29) (to be used with F30) "_____"
   - ☐ Lease for Lease/Purchase Agreement (F30) (to be used with F29) "_____"
   - ☐ Legal Description Exhibit (F147) "_____"
   - ☐ Loan Assumption Exhibit (F61) "_____"
   - ☐ Payment of Community Association Fees, Disclosures and Related Issues Exhibit (F55) "_____"
   - ☐ Sale or Lease of Buyer's Property Contingency Exhibit (F90) "_____"
   - ☐ Seller's Property Disclosure Statement Exhibit (F50, F51, F52 or F53) "_____"
   - ☐ Survey of Property as Exhibit "_____"
   - ☐ Temporary Occupancy Agreement for Seller after Closing Exhibit (F140) "_____"
   - ☐ USDA-RD Loan Contingency Exhibit (F78) "_____"
   - ☐ VA Loan Contingency Exhibit (F65) "_____"
   - ☒ Other FMLS Listing - Exhibit C
   - ☐ Other _____
   - ☐ Other _____
   - ☐ Other _____

**SPECIAL STIPULATIONS:** The following Special Stipulations, if conflicting with any exhibit, addendum, or preceding paragraph (including any changes thereto made by the parties), shall control:

1) The Seller's Property Disclosure Statement is not attached hereto. Seller shall have three days from the Binding Agreement Date to provide Buyer with an accurate and complete current GAR Seller's Property Disclosure Statement. Upon completion, Seller's Property Disclosure Statement shall be incorporated into this agreement as "Exhibit D".

Additional Special Stipulations ☐ are or ☑ are not attached.

| Buyer Acceptance and Contact Information | Seller Acceptance and Contact Information |
|---|---|
| *Matthew Hollis* | *DN Real Estate Services & Acquisitions*  dotloop verified 01/24/18 10:36AM EST  QC1D-YOBT-N2VN-8HTE |
| **1** Buyer's Signature | **1** Seller's Signature |
| Matthew Hollis — 01/24/2018 | DN Estate Services & Acquisitions — 01/24/2018 |
| Print or Type Name — Date | Print or Type Name — Date |
| Buyer's Address for Receiving Notice | Seller's Address for Receiving Notice |
| Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work | Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work |
| Buyer's E-mail Address | Seller's E-mail Address |
| **2** Buyer's Signature | **2** Seller's Signature |
| Print or Type Name — Date | Print or Type Name — Date |
| Buyer's Address for Receiving Notice | Seller's Address for Receiving Notice |
| Buyer's Phone Number: ☐ Cell  ☐ Home  ☐ Work | Seller's Phone Number: ☐ Cell  ☐ Home  ☐ Work |
| Buyer's E-mail Address | Seller's E-mail Address |
| Additional Signature Page (F149) ☐ is ☑ is not attached. | Additional Signature Page (F149) ☐ is ☑ is not attached. |

| **Selling Broker/Affiliated Licensee Contact Information** | **Listing Broker/Affiliated Licensee Contact Information** |
|---|---|
| Drake Realty of GA Inc. | Keller Williams Realty Atlanta Partners |
| Selling Brokerage Firm | Listing Broker Firm |
| *Zach Grifenhagen* — 01/24/2018 | *Carissa Williams*  dotloop verified 01/24/18 9:57AM EST  VEFH-NKAW-J39O-H79J — 01/24/2018 |
| Broker/Affiliated Licensee Signature — Date | Broker/Affiliated Licensee Signature — Date |
| Zachary Grifenhagen — 357338 | Carissa Williams — 357579 |
| Print or Type Name — GA Real Estate License # | Print or Type Name — GA Real Estate License # |
| 706-681-2734 | 678-428-1687 |
| Licensee's Phone Number — Fax Number | Licensee's Phone Number — Fax Number |
| zachgrif@gmail.com | carissawilliams@kw.com |
| Licensee's E-mail Address | Licensee's Email Address |
| N/A | Dekalb Association of Realtors |
| REALTOR® Membership | REALTOR® Membership |
| 3535 Roswell Road | 1957 Lakeside Parkway, Suite 520 |
| Broker's Address | Broker's Address |
| Marietta, GA 30062 | Tucker, GA 30084 |
| 7705652044 — 7705657674 | 678.252.1900 — 678.252.1909 |
| Broker's Phone Number — Fax Number | Broker's Phone Number — Fax Number |
| DROG01 — H-62436 | KWRS03 — H-46676 |
| MLS Office Code — Brokerage Firm License Number | MLS Office Code — Brokerage Firm License Number |

**Binding Agreement Date:** The Binding Agreement Date in this transaction is the date of _____ and has been filled in by _____.

Copyright© 2018 by Georgia Association of REALTORS®, Inc.   F20, Purchase and Sale Agreement, Page 8 of 8, 01/01/18

Electronically Signed using eSignOnline™ [ Session ID : f8a5b576-8a54-416c-b338-77bc931703d2 ]

# CONVENTIONAL LOAN CONTINGENCY
# EXHIBIT "A___"

**2018 Printing**

This Exhibit is part of the Agreement with an Offer Date of 55571 _____ for the purchase and sale of that certain Property known as: 761 Antone Street _____, Atlanta _____, Georgia 30318 ____.

1. **Application.** Buyer shall promptly apply for and in good faith seek to obtain the conventional loan or loans described below ("Loan(s)") such that Buyer can fulfill Buyer's obligations hereunder prior to the expiration of this Conventional Loan Contingency.

   *[Select A. or A. and B. below. Any box not selected shall not be a part of this Agreement. All Loan terms must be filled in.]*

| [✓] A. | FIRST MORTGAGE LOAN | Loan Amount | Term | Interest Rate (at par) | Rate Type | Source Of Loans Term |
|---|---|---|---|---|---|---|
| | | 93.3 % of purchase price | 30 years | 3.9 % per annum (or initial rate on adjustable loan) | [✓] Fixed<br>[ ] Adjustable<br>[ ] Interest Only | [✓] Institutional<br>[ ] Seller<br>[ ] Other |
| [ ] B. | SECOND MORTGAGE LOAN | ___ % of purchase price | ___ years | ___ % per annum (or initial rate on adjustable loan) | [ ] Fixed<br>[ ] Adjustable<br>[ ] Interest Only | [ ] Institutional<br>[ ] Seller<br>[ ] Other |

2. **Use of Particular Mortgage Lender.** Unless an Approved Mortgage Lender is identified below, Buyer may apply for approval of the Loan(s) with any institutional mortgage lender licensed to do business in Georgia. If an Approved Mortgage Lender(s) is identified below, Buyer shall apply for approval of the Loan(s) with at least one such Approved Mortgage Lender. Nothing herein shall require Buyer to obtain mortgage financing from an Approved Mortgage Lender.

   **Approved Mortgage Lender(s)**
   Suntrust Bank
   _____

   (hereinafter singularly "Approved Mortgage Lender" and collectively "Approved Mortgage Lender(s)")

3. **Buyer May Apply for Different Loan(s).** A Loan Denial Letter (as that term is defined below) must be for the Loan(s) described above. Buyer may also apply for different loans than the Loan(s) described above. However, the denial of such other loans shall not be a basis for Buyer to terminate this Agreement.

4. **Buyer to Notify Seller of Intent to Proceed.** When it is known, Buyer shall promptly notify seller of any mortgage lender to whom Buyer has sent a notice of intent to proceed with loan application and the name and contact information for the loan originator.

5. **Financing Contingency.** Buyer shall have 24 days from the Binding Agreement Date ("Financing Contingency Period") to determine if Buyer has the ability to obtain the Loan(s) described above ("Financing Contingency"). Buyer shall be deemed to have the ability to obtain the Loan(s) unless prior to the end of the Financing Contingency Period, Buyer: a) notifies Seller that Buyer is terminating the Agreement because Buyer has been turned down for the Loan(s) and b) provides Seller within seven (7) days from the date of such notice a letter of loan denial from a mortgage lender based upon the mortgage lender's customary and standard underwriting criteria ("Loan Denial Letter"). The Loan Denial Letter and mortgage lender issuing the Loan Denial Letter must meet all of the requirements set forth elsewhere in this Exhibit. Notwithstanding any provision to the contrary contained herein, the Loan Denial Letter may be provided to Seller after the Financing Contingency Period has ended if the above-referenced seven (7) day period to provide the Loan Denial Letter falls outside of the Financing Contingency Period.

---

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Zachary Grifenhagen IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2018 by Georgia Association of REALTORS®, Inc.     F64, Conventional Loan Contingency Exhibit, Page 1 of 3, 01/01/18

6. **Use of Approved Mortgage Lender and Loan Denial Letter.** If Buyer has agreed to apply for the Loan(s) with an Approved Mortgage Lender, the Loan Denial Letter must be from an Approved Mortgage Lender. If Buyer is not required to apply for the Loan(s) with an Approved Mortgage Lender, the Loan Denial Letter may be from any institutional mortgage lender licensed to do business in Georgia. A Loan Denial Letter from a non-institutional mortgage lender shall not be the basis for Buyer to terminate this Agreement.

   Notwithstanding any provision to the contrary contained herein, the Loan Denial Letter may not be based upon any of the following: (a) Buyer lacking sufficient funds other than the amount of the Loan(s) to close; (b) Buyer not having leased or sold other real property (unless such a contingency is expressly provided for in this Agreement); or (c) Buyer not having provided the lender(s) in a timely fashion with all information required by lender, including but not limited to, loan documentation, Official Wood Infestation Reports, structural letters, well tests, septic system certifications, flood plain certifications and any other similar information required by lender (hereinafter collectively "Required Information").

   Buyer may terminate this Agreement without penalty based upon an inability to obtain the Loan(s) only if Buyer fulfills all of the applicable requirements set forth in this Exhibit.

7. **Right of Seller to Request Evidence of Buyer's Ability to Close.** If the Financing Contingency ends without Buyer terminating this Agreement, Seller shall have the right, but not the obligation, to request that Buyer provide Seller with written evidence of Buyer's financial ability to purchase the Property ("Evidence"). A copy of a loan commitment from each institutional mortgage lender from whom Buyer is seeking mortgage financing to purchase the Property stating the type, amount and terms of the loan(s) and the conditions for funding the loan(s), shall be deemed sufficient Evidence. The provision of such Evidence is not a guarantee that the mortgage loan(s) will be funded or that Buyer will close on the purchase of the Property. Buyer shall have seven (7) days from the date Seller delivers notice to Buyer requesting such Evidence to produce the same. No request for such Evidence shall be made by Seller less than seven (7) days from the date of Closing.

8. **Seller's Right to Terminate.** In the event Buyer fails to provide Seller with the Evidence of Buyer's Ability to Close within the timeframe set forth above, Seller shall notify Buyer of the default and give Buyer three (3) days from the date of the delivery of the notice to cure the same. If Buyer does not timely cure the default, Seller may terminate this Agreement within seven (7) days thereafter due to Buyer's default upon notice to Buyer. In the event Seller does not terminate this Agreement within that timeframe, the right to terminate on this basis shall be waived.

9. **Authorization of Buyer to Release Information to Seller and Brokers.** Buyer does hereby authorize Seller and the Brokers identified herein to communicate with the lenders with whom Buyer is working to determine and receive from said lenders any or all of the following information: (a) the status of the loan application; (b) Buyer's financial ability to obtain the Loan(s) or other loans for which Buyer has applied; (c) whether and when Buyer provided the lenders with Required Information; (d) whether and what conditions may remain to complete the loan application process and issue of a loan commitment; and (e) the basis for any Loan Denial Letter.

10. **Miscellaneous.** For the purposes of this Exhibit, the term "mortgage loan" shall refer to a secured lending transaction where the loan or promissory note is secured by a deed to secure debt on the Property. Whether such mortgage loan is a first or second mortgage loan is a reference to the legal priorities of the deeds to secure debt relative to each other and other liens and encumbrances.

11. **Appraisal Contingency.** In addition to Buyer's other rights herein, this Agreement shall be subject to the following appraisal contingency. Buyer shall cause the Lender to: (a) select an appraiser to perform one or more appraisals of the Property and (b) provide Buyer with a copy of any appraisal that is for less than the purchase price of the Property. If any such appraisal is for less than the purchase price, Buyer shall within __24__ days of the Binding Agreement Date have the right to request that Seller reduce the sales price of the Property to a price not less than the appraised price by submitting an Amendment to Sales Price ("ATSP") to Seller along with a copy of the appraisal supporting the lower price. In the event that Buyer does not submit an ATSP to Seller, Buyer shall be deemed to have waived Buyer's right to do so and this Agreement shall no longer be subject to an appraisal contingency.

    Seller shall accept or reject the ATSP within the earlier of: (a) three (3) days from the date that the ATSP is delivered to Seller, or (b) the time of closing (excluding any extensions of the closing resulting from the unilateral extension of the closing date). If Seller timely accepts the ATSP, Buyer shall be obligated to purchase the Property in accordance with this Agreement as amended by the ATSP. If Seller does not accept the ATSP, Buyer shall have the right, but not the obligation, to terminate this Agreement without penalty upon notice to Seller, provided that such notice is given within three (3) days of the earlier of: (a) the date that Buyer receives notice that Seller has not accepted the ATSP; or (b) the last date Seller could have accepted the ATSP. In neither circumstance shall the Buyer's right to terminate extend beyond the time of closing. Nothing herein shall require Buyer to seek a reduction in the sales price of the Property. In such event, Buyer shall be obligated to purchase the Property for the price set forth in this Agreement.

*Matthew Hollis*
_____
**1 Buyer's Signature**
**Matthew Hollis**
Print or Type Name

_____
**2 Buyer's Signature**

_____
Print or Type Name

Additional Signature Page (F149) ☐ is ☑ is not attached.

**Drake Realty of GA Inc.**
Selling Brokerage Firm

*Zach Grifenhagen*
_____
**Broker/Affiliated Licensee Signature**
**Zachary Grifenhagen**
Print or Type Name

**N/A**
_____
REALTOR® Membership

_____
**1 Seller's Signature**

_____
Print or Type Name

_____
**2 Seller's Signature**

_____
Print or Type Name

Additional Signature Page (F149) ☐ is ☐ is not attached.

**Keller Williams Realty Atlanta Partners**
Listing Brokerage Firm

_____
**Broker/Affiliated Licensee Signature**
**Carissa Williams**
Print or Type Name

_____
REALTOR® Membership

Copyright© 2018 by Georgia Association of REALTORS®, Inc.        F64, Conventional Loan Contingency Exhibit, Page 3 of 3, 01/01/18

Electronically Signed using eSignOnline™[ Session ID : f8a5b576-8a54-416c-b338-77bc931703d2 ]

# LEAD-BASED PAINT
# EXHIBIT "B____"



Georgia REALTORS®

2017 Printing

This Exhibit is part of the Agreement with an Offer Date of January 20, 2018 _____ for the purchase and sale or lease of that certain Property known as: 761 Antone Street _____, Atlanta _____, Georgia 30318 _____.

1. **Purchase and Sale or Lease Transaction Lead Warning Statement.**
   Every purchaser or tenant of any interest in residential property on which a residential dwelling was built prior to 1978 is notified that such property may present exposure to lead from lead-based paint that may place young children at risk of developing lead poisoning. Lead poisoning in young children may produce permanent neurological damage, including learning disabilities, reduced intelligence quotient, behavioral problems, and impaired memory. Lead poisoning also poses a particular risk to pregnant women. The Seller or Landlord of any interest in residential real property is required to provide the Buyer or Tenant with any information on lead-based paint hazards from risk assessments or inspections in the Seller's or Landlord's possession and notify the Buyer or Tenant of any known lead-based paint hazards. A risk assessment or inspection for possible lead-based paint hazards is recommended prior to purchase.

2. **Seller's/Landlord's Disclosure.**  [CRE 12/07/17 7:20PM EST]
   **Initials of Seller / Landlord**
   
   A. Presence of lead-based paint and/or lead paint hazard [check one below]:
      ☐ Known lead-based paint and/or lead-based paint hazards are present in the housing (explain below):
      _____
      ☑ Seller/Landlord has no knowledge of lead-based paint and/or lead-based paint hazards in the housing.
   B. Records and Reports available to the Seller/Landlord [check one below]:
      ☐ Seller/Landlord has provided the Buyer/Tenant with all the available records and reports pertaining to lead-based paint and/or lead-based paint hazards in the housing (list document below):
      _____
      ☑ Seller/Landlord has no reports or records pertaining to lead-based paint and/or lead-based paint hazards in the housing.

3. **Buyer's/Tenant's Acknowledgment.**  [MH]
   **Initials of Buyer / Tenant**
   
   A. Buyer/Tenant has received copies of all information, if any, listed above.
   B. Buyer/Tenant has read and understands the above lead warning statement and has received the pamphlet "*Protect Your Family from Lead in Your Home*".
   C. Buyer/Tenant has [check one below]:
      ☐ Received a ten (10) day opportunity (or mutually agreed upon period) to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards; or
      ☐ Waived the opportunity to conduct a risk assessment or inspection for the presence of lead-based paint and/or lead-based paint hazards.

4. **Broker's Acknowledgment.**  [GV 01/21/18 2:42PM EST]
   **Initials of Broker or Licensee of Broker**
   
   Broker has informed the Seller/Landlord of the Seller's/Landlord's obligations under 42 U.S.C. § 4852(d) and is aware of his/her responsibility to ensure compliance.

5. **Certification of Accuracy.**
   The following parties have reviewed the information above and certify, to the best of their knowledge, that the information provided by the signatory is true and accurate.

| 1 Buyer/Tenant Signature | Date | 1 Seller/Landlord Signature: *DV Real Estate Services & Acquisitions* | Date: dotloop verified 12/07/17 7:20PM EST PFKS-WWN2-P5XI-ENNI |
|---|---|---|---|
| 2 Buyer/Tenant Signature | Date | 2 Seller/Landlord Signature | Date |

Additional Signature Page ☐ is ☑ is not attached.   Additional Signature Page ☐ is ☑ is not attached.

*Zach Grifenhagen*                                         *Carissa Williams*  dotloop verified 01/21/18 2:42PM EST I254-CY4O-DIRN-U3ZO
Selling/Leasing Broker            Date                   Listing Broker                   Date

NOTE: It is the intent of this Exhibit that it be applicable to both the sale and leasing of Property. The use of terms like "Buyer/Tenant" shall mean either a Buyer or a Tenant or both as the context may indicate.

THIS FORM IS COPYRIGHTED AND MAY ONLY BE USED IN REAL ESTATE TRANSACTIONS IN WHICH Carissa Williams _____ IS INVOLVED AS A REAL ESTATE LICENSEE. UNAUTHORIZED USE OF THE FORM MAY RESULT IN LEGAL SANCTIONS BEING BROUGHT AGAINST THE USER AND SHOULD BE REPORTED TO THE GEORGIA ASSOCIATION OF REALTORS® AT (770) 451-1831.

Copyright© 2017 by Georgia Association of REALTORS®, Inc.                F54, Lead-Based Paint Exhibit, 01/01/17

Criteria   Map   Results

Previous • Next • **2 of 2**    Checked **0**    All • None • Page    Agent Single Line display    Display: Agent Full ▼ at 1 ▼ per page

☐ **Agent Full**

**$329,000**
Active



**Residential Detached**
**FMLS #:** 5944199   **Broker:** KWRS03
**761 Antone Street**
**City:** Atlanta
**County:** Fulton
**Sub/Comp:** Berkeley Park

**Availability:** No conditions
**Area:** 22
**Unit #:**
**State:** Georgia, 30318
**Lake:** None
**Waterfront:**

| Lvls | Bdrms | Baths | Hlf Bth | SCHOOLS | |
|---|---|---|---|---|---|
| Upper | 0 | 0 | 0 | **Elem:** Rivers | **Bus Rte:** |
| Main | 2 | 2 | 0 | **Middle:** Sutton | **Bus Rte:** |
| Lower | 0 | 0 | 0 | **High:** North Atlanta | **Bus Rte:** |
| Total | 2 | 2 | 0 | | |

**Age Desc:** Resale
**Year Built:** 1939
**Stories:** 1 Story
**Blding Style:** Bungalow

**Sq Ft/Source:** 0 / Not Available
**Setting:**
**Const:** Vinyl Siding

1 / 22

   Live Mortgage Info   Schedule a Showing

**Directions:** I-75 to Northside Drive to Antone St, keep Left at the fork for Antone, home will be on the right.

**Public:** Charming Craftsman Style 2 Bedroom/2 Bathroom Bungalow in Historic Berkeley Park! Newly renovated featuring wide-plank dark hard wood floors and granite counters throughout, fresh neutral paint, open-concept floor plan, spacious kitchen with stainless steel appliances, large bedrooms, private back yard, and new roof. Enjoy In-Town living with neighborhood shopping and dining and close proximity to interstate for easy access to area attractions!

**Private:**

──── FEATURES ────

| | | | |
|---|---|---|---|
| **Bedroom:** | Bdrm On Main Lev, Mstr On Main | **Dining:** | None |
| **Master Bath:** | Double Vanity, Tub/Shower Combo | **Kitchen:** | Counter Top - Solid Surface |
| **Rooms:** | Other | **Appliances:** | Dishwasher |
| **Laundry:** | Main Level | **Basement:** | Crawl Space |
| **Interior:** | Hardwood Floors | **Accessibility:** | None |
| **Exterior:** | Fenced Yard | **Neigh. Amen:** | Walk to Marta, Walk to Shopping |
| **Lot Size:** | Under 1/3 Acre (Acres : 0.14) **Source:** Public Records | **Lot Desc:** | Private Backyard |
| **Parking:** | Parking Pad | **Roads:** | Paved, Public Maintain |
| **Roof:** | Other | **Energy:** | None |
| **Heating:** | Forced Air | **Cooling:** | Ceiling Fans |
| **Water:** | Public | **Sewer Desc:** | Public Sewer |
| **Tennis on Property:** No | | **Pool:** | None |
| **# Fire Places:** 1 | | **Fireplace:** | In Great/Fam Room |
| **HERS Index:** No | | **Grn Bld Cert:** | |
| **Dock:** | | **Boathouse:** | |

──── LEGAL | FINANCIAL | TAX INFORMATION ────

**Tax ID:** 17 015200080135
**Land/Lot:** 0   **District:** 05
**Plat Book/Page:** 0/0
**Special Listing Conditions:** None
**Association Fee:** $/None
**Master Assoc Fee:** $/
**Assoc Include:**
**HOA Phone:**
**Owner Finance:** No
**Mgmt Co:**

**Tax/Tax Year:** $3,412 / 2016
**Section/GMD:** 0
**Deed Book/Page:**
**Special Circumstances:** Investor Owned
**Frequency:**
**Frequency:**

**HOA Rent Restriction:** No
**Owner 2nd:** No
**Mgmt Phone:**

**Lot Dim:** 0
**Lot:** 0   **Block:** 0
**CPHB:**

**Swim/Tennis:**
**Initiation Fee:**
**Home Warranty:** No
**Assessment Due/Contemplated:** No
**Assumable:** No
**Mgmt Email:**

Click on the arrow to view Realist Tax Information

──── LISTING AGENT | OWNER | SHOWING INSTRUCTIONS ────

**Agent License#:** 357579
**Firm License#:** H-46676
**Office:** KELLER WILLIAMS REALTY ATL PART (KWRS03)
**Show Inst:** Courtesy Call-Agent, Lockbox - Supra, Text Listing Agent, Vacant
**Owner:** DN Real Estate Services
**Selling Comm:** 3
**List Date:** 12/07/2017

**Agent:** Carissa Williams
**Co-Agent:**

**Owner Phone:**
**VRC:** No
**Original List Price:** $344,900

**Phone/Cell:** (678) 428-1687/(678) 428-1687
**Phone/Cell:**
**Phone/Fax:** (678) 252-1900/(678) 252-1909
**Email:** carissawilliams@kw.com
**SB present offers direct to Seller:** Yes
**Dup FMLS#:**
**Act DOM:** 44

Click on the arrow to view History Information

Saturday, January 20, 2018    5:04 PM        **Requested By:** Zach Grifenhagen

Property Category is one of 'Residential Detached', 'Residential Attached'
Property Category is 'Residential Detached'
Status is one of 'Active', 'Contingent-Due Diligence', 'Contingent-KO', 'Contingent-Other', 'Pending Offer Approval'
Street Name is 'antone'
Ordered by Status, Curr Price descending

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| IN RE: ) | |
| ) | CHAPTER 11 |
| DN REAL ESTATE SERVICES & ) | |
| ACQUISITIONS, LLC ) | |
| Debtor, ) | CASE NO.: 17-55587-pmb |
| ) | |

## CERTIFICATE OF SERVICE

This is to certify that I have this day served a copy of the within and foregoing Motion for Approval to Sell Real Property, in the above styled case by depositing same in the United States mail with the adequate postage affixed thereto to insure delivery addressed as follows:

SEE ATTACHED LIST FOR CREDITORS

Dated this 27th day of February, 2018

/s/
Howard Slomka
GA Bar # 652875
Slipakoff & Slomka, P.C.
Attorney for Debtor
2859 Paces Ferry Road, SE
Suite 1700
Atlanta, GA 30339
Tel. (404)800-4001

```
Label Matrix for local noticing        American Express                    American Express Bank, FSB
113E-1                                 PO Box 1270                         c/o Becket and Lee LLP
Case 17-55587-pmb                      Newark, NJ 07101-1270               PO Box 3001
Northern District of Georgia                                               Malvern  PA 19355-0701
Atlanta
Tue Nov  7 11:24:08 EST 2017

BB&T                                   (p)BB AND T                         (p)BANK OF AMERICA
PO Box 580340                          PO BOX 1847                         PO BOX 982238
Charlotte, NC 28258-0340               WILSON NC 27894-1847                EL PASO TX 79998-2238


Heather D. Brown                       Cortney Newmans                     US Real Estate Services & Acquisitions, LLC
Brown Law, LLC                         909 Glerlea Lane                    2626 Howell Mill Rd
138 Bulloch Avenue                     Greenville, SC 29617-1229           Suite D - 199
Roswell, GA 30075-4420                                                     Atlanta, GA 30318-1732


DeKalb County Tax Commissioner         FCI Lender Services, Inc.           (p)FIFTH THIRD BANK
4380 Memorial Drive                    PO Box 27370                        MD# RDPS05 BANKRUPTCY DEPT
Suite 100                              Anaheim, CA 92809-0112              1850 EAST PARIS SE
Decatur, GA 30032-1239                                                     GRAND RAPIDS MI 49546-6253


Fifth Third Bank                       Frontier Airline                    Groundfloor Finance Inc.
PO Box 9013                            PO Box 23066                        75GA, ATLMA
Addison, Texas 75001-9013              Columbus, GA 31902-3066             75 5th Street NW #2170
                                                                           Atlanta, GA 30308-1019


H4 Investments Group, LLC              H4 Solutions Group, Inc.            INTERNAL REVENUE SERVICE
PO Box 1254                            PO Box 1254                         P O BOX 7346
Alpharetta, GA 30009-1254              Alpharetta, GA 30009-1254           2970 MARKET STREET
                                                                           PHILADELPHIA, PA 19104-5002


Internal Revenue Service               Jeff Stamey                         Jeffrey L. Stamey
P. O. Box 7346                         4420 Sylvia Drive                   c/o Heather D. Brown
Philadelphia, PA 19101-7346            Kennesaw, GA 30144                  Brown Law, LLC
                                                                           Roswell, GA 30075


Kabbage                                Lindsay P. S. Kolba                 Lakelands FCU
PO Box 77073                           Office of the U.S. Trustee          PO Box 790408
Atlanta, GA 30357-1073                 Suite 362                           Saint Louis, MO 63179-0408
                                       75 Ted Turner Drive, S.W.
                                       Atlanta, GA 30303-3330


LendingHome Funding Corp.              Juda Rasmus                         Secretary of the Treasury
FCI Lender Services, Inc.              Vinyent Realty                      15th & Pennsylvania Avenue, NW
P.O. Box 27370                         75 5th Street, N.W.                 Washington, DC 20200
Anaheim Hills, CA 92809-0112           Atlanta, GA 30308-1019


Howard P. Slomka                       Smith & Shin                        Jeff Stamey
Slipakoff & Slomka, PC                 4501 Old Spartanburg Road, Suite 15 4420 Sylva Drive
Overlook III - Suite 1700              Taylors, SC 29687-4105              Marietta, GA 30064-1538
2859 Paces Ferry Rd, SE
Atlanta, GA 30339-5213
```

| | | |
|---|---|---|
| Swank Law Group, LLC<br>c/o Justin M. Pawluk<br>675 Mansell Road<br>Suite 135<br>Roswell, GA 30076-4870 | Thomas Eagan<br>5401 Hedge Brook Cove<br>Acworth, GA 30101-7143 | Matthew F. Totten<br>Weissman, PC<br>One Alliance Center, 4th Floor<br>3500 Lenox Road<br>Atlanta, GA 30326-4228 |
| U. S. Securities and Exchange Commission<br>Office of Reorganization<br>Suite 900<br>950 East Paces Ferry Road, NE<br>Atlanta, GA 30326-1382 | United States Trustee<br>362 Richard B Russell Bldg<br>75 Ted Turner Drive, SW<br>Atlanta, GA 30303-3315 | C. Brent Wardrop<br>Weissman PC<br>One Alliance Center, 4th Floor<br>3500 Lenox Road<br>Atlanta, GA 30326-4228 |

The preferred mailing address (p) above has been substituted for the following entity/entities as so specified by said entity/entities in a Notice of Address filed pursuant to 11 U.S.C. 342(f) and Fed.R.Bank.P. 2002 (g)(4).

| | | |
|---|---|---|
| BB&T Bankruptcy<br>M/C 100-50-01-51<br>P.O. Box 1847<br>Wilson, NC 27894-1847 | Bank of America<br>PO Box 982235<br>El Paso, TX 79998 | Fifth Third Bank<br>38 Fountain Square Plaza<br>Cincinnati, OH 45263 |

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

| | | |
|---|---|---|
| (u)Brendan Hill | (d)Heather D. Brown<br>Brown Law, LLC<br>138 Bulloch Avenue<br>Roswell, GA 30075-4426 | (u)Keller Williams Realty Buckhead |
| (u)Lending HomeFunding Corp., | (u)LendingHome Funding Corp., | (u)Lindsay McMullen<br>c/o Taylor Adkins, broker<br>taylorpolhamus@oursayalstue.com |

End of Label Matrix
Mailable recipients 35
Bypassed recipients 6
Total 41